## ROSSER v. TEXAS CO.

No. 24307.   July 2, 1935.

Rehearing Denied Sept. 10, 1935.

Biddison, Campbell, Biddison & Cantrell, for plaintiff in error.

J. H. Hill, John R. Ramsey, B. W. Griffith, and Sol H. Kauffman, for defendant in error.

CORN, J.   The defendant in error, the Texas Company, a Delaware corporation, in whose name the case was revived, prosecuted this action, brought by plaintiff's predecessor, against the plaintiff in error, I. G. Rosser, to recover the sum of $8,047.20, the said amount being alleged to have been received as the proceeds of the check of the plaintiff's predecessor wrongfully issued and payable to defendant, alleging that the defendant received fraudulently and without right said sum of money from the plaintiff.

The defendant, by his answer and amendment thereto, defended upon the ground that the plaintiff's own negligence caused its said loss and plaintiff was estopped to assert or claim that the defendant was liable to plaintiff, and estopped to deny that the check sued upon was issued and delivered to defendant in due course for value without notice on the part of the defendant of any infirmities therein; that said original plaintiff received full value of said check upon the issuance and delivery thereof, and that plaintiff received the benefits thereof and received the oil described in said check.

The case was tried to a jury, and at the close of the evidence each party moved the court for an instructed verdict in its or his favor.

The further proceedings are as follows:

"The Court:   What does the plaintiff say there is to submit to the jury?  Mr. Moss: Nothing.  The Court:  What does the defendant.say?  Mr. Biddison:  The only thing that could go to the jury, and I say there is no controversy in the evidence about it, is the question of estoppel.  The Court:  So both sides say there is no conflict in the testimony to be submitted to this jury, and therefore it is a question of law for the court?  Mr. Moss:  Yes, sir.  Mr. Biddison: Yes, sir.  Mr. Moss:  Let me suggest to Your Honor this:  These two motions of ours, by these opposite parties, do not withdraw, as a matter of law, this case from the jury. If there is anything for the jury to deter-

mine I should be glad to stipulate with these gentlemen that the case shall be decided by the court upon these questions, then that will sure bind us. Mr. Biddison: We say there is absolutely nothing to submit to the jury in the case, except the question of estoppel and there is no dispute upon that proposition. There is no dispute about the evidence. The Court: Gentlemen of the jury, the court is directing you to render a verdict in this case for the plaintiff for the sum of $8,047.20 with interest at the rate of six per cent. per annum from the 18th day of July, 1923. This is done for the reason that the court holds as a matter of law that under the undisputed evidence in this case that Mr. Rosser took this money under such circumstances that he ought to have made some inquiry of the true owner, the Texas Company, as to how it should be applied."

The parties will be referred to as they appeared in the trial court. The uncontroverted evidence showed the following facts: That one J. E. Goss, a defendant in the action who defaulted, was in the employ of plaintiff on February 15, 1921, and was then in charge of one of plaintiff's departments; that he either prepared or had the check in question prepared and in so doing used as a basis for the procurement of the signatures of plaintiff's proper officers thereon and the issuance thereof the amount of 2,299.20 barrels of oil.

The further facts, as disclosed by the record, show that Goss took the check to the defendant and told him that he had purchased some oil from a woman, for his company, and was making a profit on it, and that was against the rules of the company, and therefore, he had bought the oil in Rosser's name, and had a check issued to him. The defendant accepted the said check issued to him by the plaintiff in the sum of $8,047.20, endorsed the check, and had the full amount deposited to his credit in the bank and in turn gave his check to Goss for $8,000.

The defendant testified that he had been acquainted with Goss for a period of ten years prior to the transaction, that he was not in the business of buying and selling oil, and had never sold any oil to said company and that said company was not indebted to him at the time said check was issued in the sum of $8,047.20, or in any amount, and that he did not purchase the oil from this woman, that he did not have any agreement with Goss prior to the date the check was brought to him at his store, and it was merely an accommodation on his part. an exchange of checks; and he further testified that the difference between the checks in the sum of $47.20 was applied on the account that Goss owed at the Rosser-Casebeer Furniture Company, and that he, Rosser, was president of the said company.

But the further fact, as disclosed by the answer filed by said defendant, touching upon the difference in the amount of the two checks, is as follows:

"This defendant further alleges that his only connection with the cashing of the check was to cash the same as an accommodation to the said J. E. Goss, Jr., in whom he reposed confidence, without thought of or intent to wrong, deceive, or defraud the plaintiff, and that this defendant only received of the proceeds of said check the sum of $47, and as he had no intent to defraud the plaintiff either in his own behalf or in behalf of the said J. E. Goss, Jr., he cannot be liable to plaintiff for more than the sum actually received, which he now tenders into court."

The plaintiff in error complains of various rulings of the trial court, but states in his brief that he elects to stand upon the one proposition that his evidence to sustain the plea of estoppel was uncontradicted and was undoubtedly sufficient to entitle him to have it submitted to the jury, and plaintiff in error elects to stand upon the refusal of the court to submit it to the jury, claiming the same to be error, and further states, in his brief:

"For the purpose of this appeal we may concede that the money was that of plaintiff, and that Goss was not entitled to receive the same, nor was defendant, except that the plaintiff by its gross negligence and careless conduct enabled its own agent to defraud it and to use defendant as an innocent victim in the perpetration of a fraud; that when plaintiff in the careless conduct of its business, as appears from the undisputed evidence, issued said check by and through its agent, duly authorized, and whose duty it was to issue and deliver the same, and caused the same to be delivered to defendant, stating to the defendant on the face thereof that it had received the consideration for said check, to wit, 2,299.20 barrels of Okmulgee county oil run prior to January 31, 1921, at $3.50 per barrel, and this in accordance with the terms of a division order, it is estopped by its conduct to deny that it received the oil and received the consideration for said check, That consideration did not have to come from the defendant, Rosser; it is wholly immaterial where the oil came from, or who owned it. Rosser testified that he relied upon the representations on the face of the check and upon the belief that Stew-

art, whom he knew, would not have issued the check payable to him had his, Stewart's, company not received the oil as recited thereon. Defendant says Goss represented that he, Goss, had bought the oil and made a profit on it and had gotten the order from the woman in Rosser's name instead of his, Goss' name, over at the Texas Company; that they agreed that Rosser would take the check, credit Goss with $47.20 at the furniture store, and Rosser would give Goss a check for the balance, and the agreement was carried out. Rosser said he had known Stewart for a good many years and never thought for a minute that Stewart would sign a check to him unless it was a legal transaction, or that a check like that would go through with Stewart's signature without being a straight instrument, and that he relied on the statement in the check as being true."

He then contends that he was entitled to have the issue of estoppel submitted to the jury, and states estoppel is always a question for the jury in a law action whenever there is any evidence reasonably tending to sustain it, and in this case the facts upon which he relies as establishing estoppel are not even controverted or disputed.

It is therefore important for us to first examine the evidence upon which the defendant claims an estoppel could be founded. As we understand the defendant's contention, the most important thing upon which he claims that an estoppel arises as against the plaintiff is the fact that the Texas Company's check which Rosser received and cashed bore the notation thereon:

"In full for 2,299.20 barrels at $3.50 same being Okmulgee County Oil run up to and including 1-31-21 in accordance with terms of division order."

It is contended by defendant that the inclusion of this notation upon the check estopped the plaintiff from demanding the return of its money or questioning the propriety of his disbursal to Goss. The essential elements necessary to create an estoppel have been repeatedly laid down by this court. In declaring what elements must exist, this court in the case of Bragdon v. McShea, 26 Okla. 35, at page 39, 107 P. 916, said:

"First, there must exist a false represen tation or concealment of material facts. Second, it must have been made with knowledge, actual or constructive, of the facts. Third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts. Fourth, it must have been made with the intention that it should be acted upon. Fifth, the party

to whom it was made must have relied on or acted upon it to his prejudice."

These necessary prerequisites in order to maintain an estoppel have also been announced in a number of later cases by this court: In Flesner v. Cooper, 62 Okla. 263, 162 P. 1112; Texas Company v. Petitt, 107 Okla. 243, 220 P. 956; Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329.

When Rosser accepted the check purported to be given in payment for oil he had sold to said company, when he knew he had not sold any such oil, and knew further that he had not given the plaintiff any consideration for said check, he took the same subject to all equities and imperfections which the maker thereof at such time had. It was his duty to account to the maker of said check for its proceeds, and having failed to do so, he dealt with such proceeds at his peril.

A person relying on an estoppel must have exercised such reasonable diligence as the circumstances of the case require, and if he conducts himself with a careless indifference to the means of information reasonably at hand or ignores highly suspicious circumstances, which should warn him of danger or loss, he cannot invoke the doctrine of estoppel.

No estoppel arises where the party setting it up is under as great obligation to inform the person sought to be estopped of the real facts as the latter is to inform himself. There can be no estoppel where the truth is known to both parties, or where they both have equal means of knowledge.

A party claiming estoppel must have proceeded in good faith. Good faith is defined in section 31, O. S. 1931, as follows:

"Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

It is not enough, in order to constitute an estoppel, that one or more of these elements exist; the rule is that all must be present. This requirement is not met in the instant case for the reason that Rosser knew at the time that he accepted the check that he had not sold any oil to the Texas Company, and that the Texas Company had not become indebted to him, and therefore he could not have been, and was not misled by the notation upon the check. The

lack of the essential element now being discussed was particularly noted in the case of Flesner v. Cooper, supra. The court on page 267 of the opinion said:

"The essentials of estoppel, as above outlined, are not all present in this case; for it appears that the defendant was not without notice of the real facts."

Certainly Rosser cannot now be heard to claim that he was misled by any act or statement of the Texas Company into thinking that he had sold certain oil to that company, or that the company was indebted to him therefor, or that these things should be inferred, when the evidence was positive that he knew that he had not sold such oil, and that he was not a creditor of the company. The undisputed facts, as disclosed by the record, admit of only one conclusion, and that is that nothing the Texas Company did or said could possibly have misled Rosser into taking the course that he did. If Rosser was misled, it was by his alleged friend Goss, acting entirely outside the scope of any agency on behalf of the plaintiff.

It being conceded by both parties that there was no issue of fact to be submitted to the jury, no dispute in the evidence even upon the question of estoppel, and it being apparent that the case turned upon a question of law, there was no necessity of permitting the jury to speculate as to whether, under the admitted facts, an estoppel existed. That was a matter for the court's determination, and to submit the same to the jury would have been entirely improper.

In 64 C. J., pages 338-341, the rule is thus stated:

"As a general rule, where the facts are uncontradicted, or undisputed, or where there is no substantial conflict or substantial doubt in the evidence, or where the facts are admitted, or conceded, or are conclusive on a party or are found by the jury, or where the thing proves itself, or where but one conclusion or inference is reasonably possible from the evidence, the question is one of law for the trial court, and not one of fact for the jury."

In Bell v. Carter, 164 Fed. 417, it was held:

"Whilst it is true that a substantial conflict in the evidence must be determined by the jury as a question of fact, it is also true that when the evidence is undisputed, or is so clearly preponderant that it reasonably admits of but one conclusion, the proper disposition of the case upon the evidence becomes a question of law, to be determined by the court."

This is not to be confused with the rule followed in some states to the effect that where, in a trial truly involving issues of fact, both sides move for peremptory instructions, this takes the matter from the jury. It is rather the case where each side, upon inquiry from the trial court as to whether there is any issue of fact to be submitted to the jury, declares that there is none. When this is done, it becomes the province of the court to determine the case upon the evidence presented as a matter of law. After this has been done and the matter so determined, it would be unfair to the trial court for one of the parties thereafter to claim that the issues should have gone to the jury. The rule is well recognized in our jurisdiction that where the parties have tried a case upon one theory, they cannot depart therefrom upon appeal.

The defendant has presented a number of cases dealing with estoppel of one sort or another, and seems to assume that because under certain issues of fact the question has been submitted to a jury, they should be controlling here. It does not at all follow, for the reason that those cases are clearly distinguishable from the present case, and for the reason that real issues of fact were there involved.

There being no disputed facts to submit to the jury, and the defendant having failed to establish sufficient proof to entitle him to recover under the plea of estoppel, the trial court did not err in instructing it to render a verdict in favor of the plaintiff.

The judgment of the trial court, therefore, is affirmed.

All the Justices concur.