DEVON ENERGY PRODUCTION CO. v. WYCKOFF



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:DEVON ENERGY PRODUCTION CO. v. WYCKOFF

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 DEVON ENERGY PRODUCTION CO. v. WYCKOFF
2020 OK CIV APP 4
Case Number: 117242
Decided: 12/31/2019
Mandate Issued: 01/29/2020
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2020 OK CIV APP 4, __ P.3d __

 

DEVON ENERGY PRODUCTION COMPANY, L.P., an Oklahoma Limited Partnership, Plaintiff/Appellant,
v.
CAROLYN J. WYCKOFF, and THE HAROLD B. GRIFFITH and SONYA GRIFFITH REVOCABLE TRUST dated June 16, 2015, HAROLD B. GRIFFITH and SONYA GRIFFITH as Co-Trustees, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
MAJOR COUNTY, OKLAHOMA

HONORABLE TIMOTHY HAWORTH, JUDGE

REVERSED AND REMANDED

David A. Elder, Erin L. O'Roke, HARTZOG CONGER CASON & NEVILLE, Oklahoma City, Oklahoma, for Appellant,

Chaille Walraven, Mark E. Walraven, GRAFT & WALRAVEN, PLLC, Clinton, Oklahoma, for Appellees.

Larry Joplin, Presiding Judge:

¶1 Appellant, Devon Energy Production Company, L.P., seeks review of the trial court's July 25, 2018 Journal Entry of judgment in which it granted Defendants', Wyckoff, et al., 12 O.S. 2001 §2012(B)(6) Motion to Dismiss Devon's cause of action for failure to state a claim on which relief could be granted.[1] For the reasons provided, we reverse and remand this cause to the district court for further proceedings.

¶2 Devon filed its Petition on October 11, 2017 asserting Defendants' attorney approached Devon about entering into a lease with his two clients regarding lease holdings that had recently been released from Chesapeake Exploration, L.L.C. The attorney said his two clients had approximately 400 nma (net mineral acres) in Sec 3-20N-17W in Woodward County and if Devon was still active in this area, would Devon be interested in the leases. The parties entered into a lease agreement in which the Defendants gave no warranty of title and Devon was to assume responsibility for the title search.[2] In consideration for the two leases, Devon paid $792,807.75 to each of the Defendants for the Wyckoff lease and the Griffith Trust lease, totaling $1,585,615.50. In July 2017, Devon learned Chesapeake's only interest in the section at issue was a wellbore-only interest in the Wyckoff #2-3 well located in Section 3. A 1956 lease covering lands in multiple sections, including the sections Devon understood it was leasing in, were still active due to production by one or more wells; this meant neither Wyckoff nor Griffith Trust had any mineral acres available for lease at the time it entered into the lease agreement with Devon.

¶3 In its Petition, Devon asserted four causes of action, count 1) breach of implied covenant of quiet enjoyment, count 2) actual and/or constructive fraud, count 3) rescission, and count 4) unjust enrichment. We review subject to a de novo standard of review:

An order dismissing a case for failure to state a claim upon which relief can be granted is subject to de novo review. When reviewing a motion to dismiss, the Court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts. A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle the plaintiff to relief. The burden to show the legal insufficiency of the petition is on the party moving for dismissal. Motions to dismiss are usually viewed with disfavor under this standard, and the burden of demonstrating a petition's insufficiency is not a light one.

Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4, ¶6, 212 P.3d 1158, 1162-63 (citations and footnotes omitted).

¶4 This case seems to rest on the parties' perceived conflict between Peabody Coal Co. v. State of Oklahoma ex rel. Comm'rs of the Land Office, 1992 OK CIV APP 83, 884 P.2d 857 and French Energy, Inc. v. Alexander, 1991 OK 106, 818 P.2d 1234. In Peabody Coal, the coal company brought a cause of action against the Oklahoma Land Office to recover payment of lease bonuses and royalties paid under a quitclaim mineral lease. Peabody Coal, 884 P.2d at 858. The lease in the Peabody Coal case was given without a warranty that the lessor was "seized in fee with the right to lease the minerals." Id. at 859. In effect, the Land Office did not warrant its title or its right to the lease. The court found this meant the lease was in the nature of a quitclaim, for which the coal company acted at its own risk and the doctrine of caveat emptor applied. Id. The court found the coal company could not recover the lease bonuses and royalties paid by claiming the Land Office had no right to the coal it purported to lease.[3] Defendants in the present case ask to be similarly treated, because they did not warrant title in their dealings with Devon, and like the Land Office the Defendants should be permitted to keep the lease payments made by Devon since the lessors did not warrant title.

¶5 French Energy examined some of the same issues that arose in Peabody Coal, wherein the purchaser of an oil and gas lease at a judicial sale brought a cause of action seeking actual and punitive damages on claims for fraud or rescission and restitution. French Energy, 818 P.2d at 1235-36. The Oklahoma Supreme Court found the appellant, who had purchased the lease, was entitled to equitable relief, "notwithstanding the doctrine of caveat emptor." Id.

¶6 The French Energy lease was purchased at a judicial sale, which effectively meant breach of warranty was an "irrelevant defense." Id. at 1237. The mineral rights French Energy "thought it was purchasing were being held by production from within the unit" and resulted in there being nothing to convey. Id. at 1238. The Oklahoma Supreme Court explained "that, regardless of fault, the oil company was not aware of the prior lease when it paid the bonus money to executor", however, the executor "was aware of the existence of a pre-existing lease," of which the executor may or may not have understood the significance. Id. at 1237. "[T]here was at the very least, a mutual mistake that was basic to the parties' bargain in that [lessor] specifically agreed to convey to [lessee] the present right to explore for oil and gas[,]" a situation similar to that which exists in this case. Id. The Oklahoma Supreme Court found that to allow the lessors to keep the bonus money in exchange for nothing would result in them being substantially and unjustly enriched.[4]

¶7 With respect to fraud, the French Energy court said the following:

The doctrine of caveat emptor can never be invoked to perpetrate a fraud. The purchaser is entitled to receive the title owned by the estate of the decedent at the time of his death or prior to the sale. The estate will never be allowed to retain its title to the property and also retain the purchase price therefor. The law requires the estate to part with whatever title it has in and to the land before it will be permitted to retain the purchase price therefor.

Id. at 1239 (emphasis added). The appellate court found the doctrine of caveat emptor would "not shield a seller from purporting to sell that which he does not have." Id.

¶8 It is Devon's allegation of fraud that compels this court, at this time, to reverse the decision of the district court. Whether Devon can or will prevail in its allegation of fraud is not before the appellate court at present, but Devon has alleged the Defendants knew or should have known the net mineral acres they purported to lease to Devon were covered by a 1956 lease that was still in production, so that the minerals were not available to be leased to Devon. Devon alleged Defendants should have known they continued to receive royalties tied to the 1956 lease and failed to disclose this to Devon and intended Devon to rely on their misrepresentations. Devon alleged it in fact relied on Defendants' omissions and misrepresentations to its detriment, and suffered damages as a result.

¶9 On the record provided, this court cannot determine whether any fraud was perpetrated. The §2012(B)(6) motion is not intended to test these underlying facts. However, Devon's pleading does not "indicate beyond any doubt that the litigant can prove no set of facts which would entitle" it to relief. Tuffy's, Inc., 2009 OK 4, ¶6, 212 P.3d at 1163. In moving for this §2012(B)(6) dismissal, the Defendants had the burden to show the legal insufficiency of the petition. In light of the uniquely fact specific fraud claim presented here, Defendants did not meet this burden below.

¶10 The order of the district court, granting the Defendants' §2012(B)(6) motion for failing to state a claim upon which relief can be granted, is REVERSED and this cause is REMANDED for further proceedings.

BUETTNER, J., and GOREE, C.J., concur.

FOOTNOTES

[1] It should be noted additional materials, including the initial email chain, were included as exhibits with the §12(B)(6) motion. However, the trial court appeared to go to some effort to maintain the motion as a §12(B)(6) and not have it converted into a motion for summary judgment, as the court indicated it would not consider the additional exhibits and matters outside the pleadings. For this reason, we review this appeal as a §12(B)(6) proceeding and not one for summary judgment.

[2] The following language was stricken from the leases, but the text could still be read as follows, "warrants and agrees to defend the title to the lands herein described and". Devon's title search did not reveal an existing 1956 lease at the time the parties entered into the lease agreement.

[3] A covenant of warranty in a mineral lease includes the obligation that the lessor is seized in fee with the right to lease the minerals. Walker & Withrow, Inc., v. Haley, 653 P.2d 191 (Okl.1982). However, when a lease is given without such a warranty, it is in the nature of a "quitclaim" and leases only such interest as the lessor owns. (See Schuman v. McLain, 177 Okla. 576, 61 P.2d 226 (1936) for discussion of the nature of quit claim deeds to real property.) Because Land Office did not warrant its title or its right to lease, Coal Company may not now seek to recover lease bonuses and royalties paid on the grounds that Land Commission had no right to the coal. Since the lease was in the nature of a quitclaim, Coal Company, at its own risk, paid for whatever interest Land Office owned, whether it was 0% or 100% or something in between. The doctrine of caveat emptor applies. Compare Siniard v. Davis, 678 P.2d 1197 (Okl.App.1984). The lease involved in Siniard contained a general warranty of title by the lessor.

Peabody Coal, 884 P.2d at 859.

[4] In the present case, the mineral rights French thought it was purchasing were being held by production from within the unit. The contract, in clear and unambiguous terms, purported to convey the present right to explore for oil and gas. However, there was nothing to convey. To allow Appellees to keep the bonus money in exchange for nothing would result in them being substantially and unjustly enriched. We refuse to allow one party to profit by the mistake of another where, as here, both parties can be returned to the position they were in before the transaction. In short, this case is a classic illustration of when, in accordance with general principles of common justice and equity, Appellees will be required to do what it is they promised. Since this is not possible in that the mineral rights are subject to a pre-existing lease, we order the contract be rescinded and Appellant's money refunded.

French Energy, Inc. v. Alexander, 818 P.2d at 1238.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 83, 884 P.2d 857, 65 OBJ 3872, Peabody Coal Co. v. State ex rel. Com'rs of Land Office
Discussed
 1984 OK CIV APP 13, 678 P.2d 1197, Siniard v. Davis
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 106, 818 P.2d 1234, 62 OBJ 3095, French Energy, Inc. v. Alexander
Discussed
 1936 OK 593, 61 P.2d 226, 177 Okla. 576, SCHUMAN v. MCLAIN
Discussed
 2009 OK 4, 212 P.3d 1158, TUFFY'S, INC. v. CITY OF OKLAHOMA CITY
Discussed at Length
 1982 OK 107, 653 P.2d 191, Walker & Withrow, Inc. v. Haley
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA